Rome Metallic Bedstead Company, Respondent, *v.* Anable Avenue Factory Corporation, Defendant, and Degnon Realty and Terminal Improvement Company, Appellant.

Contract — guaranty — landlord and tenant — guaranty by landlord that floor of building to be erected for tenant shall carry specified load — landlord not bound to indemnify tenan ; for sagging of floor from other cause — complaint in action to recover cost of constructing new floor dismissed where necessitated by general subsidence of soil in neighborhood.

1. The obligation of a lessor which had agreed to erect a building for its tenant and guaranteed that the ground floor of the building to be erected by it should be " designed to carry a dead load of 2,000 pounds on each square foot,". and that such a load if placed there " will not injure the superstructure " nor cause the floor to sag at any place more than one inch, does not extend to indemnity for a sagging of the floor due to other causes against which it was not bound to provide.

2. Where, therefore, several years after the erection of such a building, owing to a general subsidence of the ground under and in a considerable section surrounding the building, the ground floor became so damaged that the tenant was compelled to replace it, the complaint in an action to recover its damages should be dismissed, where there is no claim that the building was negligently erected or that the ground floor could not have carried the specified load and it does not appear from the evidence that in the erection of the building the defendant should have foreseen the possibility that the condition of the land might change, and should have provided against such a contingency.

*Rome Metallic Bedstead Co.* v. *Anable Avenue Factory Corp.*, 219 App. Div. 730, reversed.

(Argued May 10, 1928; decided May 29, 1928.)

Appeal from so much of a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 21, 1927, as affirms a judgment in favor of plaintiff entered upon a verdict.

*Charles Adkins Baker* for appellant. The letter of March 6, 1916, assuming it to be effective, was at most

an insertion or addendum to the plans or specifications. It was a provision for the type and form of construction, not a warranty of permanent endurance and maintenance. (*Howard* v. *Doolittle*, 3 Duer, 464; *Fleischman* v. *Toplitz*, 134 N. Y. 349; *McKnight Flintic Stone Co.* v. *Mayor, etc.*, 160 N. Y. 72; *Tidewater Bldg. Co.* v. *Hammond*, 144 App. Div. 920; *Dwyer* v. *Mayor, etc.*, 77 App. Div. 224; *Kuhs* v. *Flower City Tissue Mills Co.*, 104 Misc. Rep. 243.)

*Harry J. Ahlheim* for respondent. The guaranty contained in the letter of March 6, 1916, was a continuing one. (*Jenet* v. *D. & H. C. Co.*, 136 N. Y. 593; *Franklin* v. *Brown*, 118 N. Y. 110; *Dearstine* v. *Dunckel*, 130 Misc. Rep. 281; *Condict* v. *Onward Constr. Co.*, 210 N. Y. 88; *Kuhs* v. *Flower City Tissue Mills Co.*, 104 Misc. Rep. 243.)

Lehman, J.   On the 30th day of November, 1915, the plaintiff and the Degnon Realty and Terminal Improvement Company executed two instruments under seal. One instrument constituted a lease by the Degnon Realty and Terminal Improvement Company, to the plaintiff, of premises in Queens county for the term of twenty-one years beginning October 1st, 1916. In the second instrument the lessor agreed to erect a building upon the leased premises before the beginning of the term. The building to be erected is described in the instrument as follows: " three story reinforced concrete factory building, generally similar to the building adjacent known as Brett Building and Studebaker Building, in size about 364 feet x 100 feet, irregular, with penthouse about 20 feet x 250 feet, floor load capacity 200 pounds per square foot, twenty foot spans between columns, with two elevators, sprinkler system, necessary plumbing and heating; the whole to be constructed in strict accordance with the plans and specifications of William Higginson, Architect,

which plans and specifications shall be subject to the approval of each of the parties hereto, and when so approved shall be signed by each of the parties and shall then constitute a part of this agreement."

In March, 1916, the Degnon Realty and Terminal Improvement Company was engaged in the construction of the building upon the premises it had agreed to lease to the plaintiff. There is evidence that the plaintiff had not at that time approved the plans for the building. A floor load capacity of 200 pounds per square foot on all the floors of the building was insufficient for the purposes of the business which plaintiff intended to conduct therein. Plaintiff refused to approve any plans for a building which would not provide a floor load capacity of 2,000 pounds per square foot on the ground floor.

In order to satisfy the plaintiff, Degnon Realty and Terminal Improvement Company then delivered to the plaintiff the following letter:

" Quotations 277,
" ROME METALLIC BEDSTEAD COMPANY,
        " #418 West 25th Street,
                        " New York, N. Y.
            " Attention Mr. Myers.
    " GENTLEMEN.— With reference to the building which we are erecting for you on Anable Avenue, Long Island City, would state that our understanding of the plans and specifications prepared by William Higginson, is that the ground floor is designed to carry a dead load of 2,000 pounds on each square foot, and that such a load if placed there by you will not injure the superstructure. It, however, may cause the floor to sag at various places not to exceed a depth of one inch. The conditions as enumerated above we guarantee.

                " Very truly yours,
        " DEGNON REALTY & TERMINAL
            IMPROVEMENT COMPANY
" ESN:JJC.                (Signed)   E. S. NUGENT."

The building was completed and the plaintiff took possession of the leased premises. There is no claim that the building was negligently erected or that at the beginning of the term the ground floor could not have carried a dead load of 2,000 pounds on each square foot without injury to the superstructure. At some period — perhaps more than a year — thereafter, the ground under the building and in a considerable section of the city surrounding the building began to subside. The cause of the subsidence is not explained. Expert witnesses do no more than conjecture, but it does appear that the subsidence bears no relation to the weight placed upon the ground or building. It took place in the streets as well as under this and other buildings. The result of the subsidence of the ground was that the floor of the building sank with the ground upon which it was built. The damage grew greater as time passed, and seven years after the beginning of the term the plaintiff was compelled to replace the concrete floor. For the consequent damages the plaintiff has recovered judgment.

Under the terms of the formal sealed instruments between the parties, Degnon Realty and Terminal Improvement Company was under no obligation to keep the building, which it had agreed to erect, in repair. Its obligation was complete when the building was erected. The plaintiff's cause of action is based upon the claim that by its letter of March, 1916, Degnon Realty and Terminal Improvement Company wrote into its contract a continuing guaranty that the floor would not sag at any point more than one inch.

The defendant urges, upon several grounds, that the letter cannot change or add to the obligations previously embodied in formal instrument under seal. We do not pass upon that contention now. Under a fair construction of the terms of the letter, even if such terms had been embodied in the sealed instrument, the defendant has given no guaranty that the floor of the building to

be erected by it would not sag because the ground below the building subsided.

The subject-matter of the agreement between the parties is the erection of a building. The defendant guaranteed that the ground floor of the building to be erected by it should be " designed to carry a dead load of 2,000 pounds on each square foot," and that such a load if placed there " will not injure the superstructure " nor cause the floor to sag at any place more than one inch. There is nothing in the evidence to indicate and, indeed, no claim is made that the building was so constructed that the ground floor could not carry a dead load of 2,000 pounds without injury to the superstructure, or that any load placed upon the floor would cause it to sag. The sagging of the floor which occurred some years thereafter was not caused or affected by any load placed upon it or by any weakness inherent in the building. Neither cause nor effect was confined to this building, and it does not appear from the evidence that in the erection of the building the defendant should have foreseen the possibility that the condition of the land might change, and should have provided against such a contingency. The defendant guaranteed that the ground floor would not be caused to sag more than one inch by the placing of a specified weight upon it. Its obligation, even if otherwise enforceable, does not by its terms extend to indemnity for a sagging of the floor due to other causes against which the defendant was not bound to provide.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

Cardozo, Ch. J., Pound, Crane, Andrews, Kellogg and O'Brien, JJ., concur.

Judgments reversed, etc.